FILED

04/03/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0557

DA 17-0557

IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 72

VICTOR FEDERATION OF TEACHERS LOCAL
3494, MEA-MFT, and JULIANA ARECHAGA,

        Applicants and Appellants,

   v.

VICTOR SCHOOL DISTRICT NO. 7, RAVALLI
COUNTY, MONTANA, and its trustees PAUL
ROSEN, MARCI SMITH, MARY ALLRED,
ROY PERRY, and STEVE WILSON,

        Respondents and Appellees.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
                     In and For the County of Ravalli, Cause No. DV 17-275
                     Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Karl J. Englund, Karl J. Englund, P.C., Missoula, Montana

                Jonathan McDonald, McDonald Law Office, PLLC, Helena, Montana

        For Appellees:

                Kris Goss, Debra A. Silk, Tony C. Koenig, Montana School Boards
                Association, Helena, Montana

                             Submitted on Briefs:  January 31, 2018
                                     Decided:  April 3, 2018

Filed:

                                   _____
                                           Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      Juliana Arechaga was a non-tenured teacher for Victor School District No. 7 (School District) when, on May 23, 2017, the School District's Board of Trustees (Board) voted to not renew her employment contract for the 2017-2018 school year. Arechaga was present at that meeting but did not receive written notice of the School District's decision until June 7. Arechaga applied for a writ of mandamus in the Twenty-First Judicial District Court, arguing that because she did not receive the written notice by June 1, the School District was statutorily obligated to renew her contract for the ensuing school year. The District Court denied her application. We reverse and remand for issuance of the writ.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2      Arechaga worked as a social studies teacher for the School District from 2014 to 2017. As a non-tenured teacher, Arechaga was subject to the School District's annual decision to renew or not renew her contract. The School District had renewed her employment contract for both the 2015-2016 and 2016-2017 school years.

¶3      When the School District hired Arechaga in 2014, she lived on Foothills Drive in Missoula. In March 2016, Arechaga moved. She did not notify the School District of her new address. The School District rarely communicated with Arechaga by mail, and it had no policy—in its faculty handbook or otherwise—obligating teachers to inform it of any change to their mailing addresses. The School District typically communicated with Arechaga in person, by telephone, or by e-mail.

¶4      Arechaga went on maternity leave on March 31, 2017, through the end of the school year. On May 16, while Arechaga was present at the school to sign up for health insurance,

2

the School District hand-delivered her written notice that the Board was going to discuss her contract at a meeting on May 23. At the meeting—with Arechaga present—the Board voted to not renew Arechaga's contract for the 2017-2018 school year.

¶5 The next day, the School District drafted a letter to Arechaga notifying her that her employment contract for the ensuing school year had not been renewed. The School District sent this letter via certified U.S. mail to the address it had on file—Arechaga's outdated Foothills Drive address. Arechaga never received the letter; it was returned to the School District as "unclaimed" on June 18. Arechaga did not receive written notice of the School District's decision until June 7, when the School District Clerk hand-delivered her a copy while she was present at the school.

¶6 Arechaga and the Victor Federation of Teachers Local 3494 (Federation)—the collective bargaining unit representing her—filed an application for a writ of mandamus in the District Court. Arechaga and the Federation asserted that because Arechaga had not received the School District's written notice by June 1, the School District was statutorily obligated to renew her contract for the 2017-2018 school year.

¶7 The court held a show cause hearing at which Arechaga testified. Arechaga asserted that she did not "in any way attempt to avoid receiving the written notice" and that, given the School District's history of communicating with her in person, by telephone, and by e-mail, it "didn't even occur" to her to notify the School District of her updated mailing address.

¶8 After the hearing, the District Court denied the application. The court agreed with Arechaga that under § 20-4-206(1), MCA—which obligates a school district to "provide"

3

written notice by June 1 of its decision to not renew a teaching contract for the ensuing school year—written notice becomes effective only upon receipt by the teacher. But the court noted that "constructive receipt and notice are chargeable to one who willfully avoids or frustrates written notice." The court found as a matter of fact that Arechaga "did not take active steps, per se, to avoid notice." It concluded nonetheless that "her neglect and lack of diligence in maintaining a current address on file with the school district were the sole cause of her failure to receive timely notice of the non-renewal of her contract." The court held that this excused the School District's "mandatory duty to provide her with written notice by June 1, 2017." The court concluded that the School District was not obligated to renew Arechaga's employment contract for the 2017-2018 school year. Arechaga appeals.

## STANDARD OF REVIEW

¶9 A district court's decision to issue or deny a writ of mandamus presents a conclusion of law that we review for correctness. *City of Deer Lodge ex rel. City of Deer Lodge Ordinances 130 & 136 v. Chilcott*, 2012 MT 165, ¶ 12, 365 Mont. 497, 285 P.3d 418.

## DISCUSSION

¶10 Section 20-4-206(1), MCA, provides:

The trustees shall provide written notice by June 1 to each nontenure teacher employed by the district regarding whether the nontenure teacher has been reelected for the ensuing school fiscal year. A teacher who does not receive written notice of reelection or termination is automatically reelected for the ensuing school fiscal year.

4

"Subject to the June 1 notice requirements in this section," the statute permits a school district to refuse to renew a non-tenure teacher's employment "with or without cause." Section 20-4-206(3), MCA.

¶11 Arechaga argues that because she did not receive written notice of the non-renewal of her contract by June 1, 2017, she was "automatically" rehired for the 2017-2018 school year by operation of law. She contends that the District Court misapplied the law in determining that Arechaga's failure to update her mailing address with the School District excused the School District's obligation to ensure that she received timely written notice of its decision. Arechaga contends that a writ of mandamus is appropriate in this case because the School District had a clear legal duty to renew her contract and because she has no other speedy and adequate legal remedy available to her.

¶12 The School District argues that it complied with the requirements of § 20-4-206(1), MCA, by mailing written notice on May 24, 2017, to the address that it had on file for Arechaga. It emphasizes that Arechaga had actual notice of the School District's decision prior to June 1 because she attended the May 23 meeting at which the Board voted to not renew her contract. The School District argues that Arechaga's failure to update her address—rather than anything the School District did—frustrated delivery of the written notice. The School District contends that Arechaga has not satisfied the requirements for a writ of mandamus because the action she seeks to compel—the renewal of her teaching contract—is not a "ministerial act," and because the appropriate remedy for her was a declaratory judgment action, rather than a writ of mandamus.

¶13    A writ of mandamus compels "the performance of an act that the law specially enjoins as a duty resulting from an office, trust, or station." *Citizens for a Better Flathead v. Bd. of Cnty. Comm'rs*, 2016 MT 325, ¶ 58, 385 Mont. 505, 386 P.3d 567 (citing § 27-26-102, MCA).  A writ of mandamus is available when "(1) the party who applies for it is entitled to the performance of a clear legal duty by the party against whom the writ is sought; and (2) there is no speedy and adequate remedy available in the ordinary course of law." *Citizens for a Better Flathead*, ¶ 58 (citation and internal quotations omitted).  The "clear legal duty must involve a ministerial act, not a discretionary act." *Citizens for a Better Flathead*, ¶ 59 (citation and internal quotations omitted).  An act is ministerial when "the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Citizens for a Better Flathead*, ¶ 59 (citation and internal quotations omitted).

**A.  Legal Duty**

¶14    In construing the terms of a statute, we are bound by its plain language.  If the statute's language is "clear and unambiguous," we "will not interpret the statute further." *Mont. Sports Shooting Ass'n v. State*, 2008 MT 190, ¶ 11, 344 Mont. 1, 185 P.3d 1003.  Our role "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA.

¶15    Section 20-4-206(1), MCA, requires a school district to "provide written notice by June 1" of its decision to not renew a contract for the ensuing school year.  The District Court determined that, under the plain language of the statute, written notice is not

6

"provided" by June 1 unless it is *received*—and not merely mailed—by that date.  We have held that, under the common law,

> Where a statute or rule merely states that written notice must be given, without stating how it is to be given, it is not enough that the notice is mailed. It must also be received.  In other words, the effective date of the notice is the day it is received, rather than the day it is mailed.

*Grenfell v. Anderson*, 1999 MT 272, ¶ 34, 296 Mont. 474, 989 P.2d 818 (quoting 58 Am. Jur. 2d *Notice* § 35 (1989)).  The statute expressly adopts this common-law rule by requiring the teacher's receipt of the notice.  Section 20-4-206(1), MCA.  Arechaga was not provided written notice of the School District's decision by June 1.

¶16    The School District emphasizes that Arechaga had actual notice of the non-renewal of her contract, thus fulfilling the intent of § 20-4-206(1), MCA, which it asserts is to ensure that teachers receive timely notice of their employment status for the ensuing school year. The School District cites § 1-1-217, MCA, which provides, "Each person who has actual notice of circumstances sufficient to put a prudent person upon inquiry as to a particular fact has constructive notice of the fact itself."

¶17    Without doubt, Arechaga's presence at the May 23, 2017 board meeting gave her actual and constructive notice of the School District's decision to not renew her contract. But when "a statute requires a written notice, an actual oral notice is insufficient."  58 Am. Jur. 2d *Notice* § 10 (2012) (citing *In re Marriage of Lugo*, 170 Cal. App. 3d 427 (1985)). Section 20-4-206, MCA, is specific; it plainly requires that the School District provide a teacher with "written notice" of its decision by June 1.  If the teacher does not receive that written notice within the time the statute allows, she is "automatically reelected," and the

7

School District may not "nonrenew" her employment without cause. Section 20-4-206(1), (3), MCA. The statute contains no exception for a teacher who receives actual notice of non-renewal of her employment contract.

¶18 Section 1-1-217, MCA, articulates a general principle of constructive notice. But § 20-4-206, MCA, is specific, and it controls here. *See* § 1-2-102, MCA. We would be elevating the general over the specific and "insert[ing] what has been omitted" from the controlling statute if we agreed that the School District satisfied the written notice requirement because Arechaga had actual notice of its decision. *See* § 1-2-101, -102, MCA. We decline to create judicially an exception to the statute's clear mandate that a School District provide a teacher with "written notice" of non-renewal of her contract by June 1. *See* § 20-4-206(1), MCA. The School District's failure to provide Arechaga with timely written notice nullified its attempted non-renewal under the explicit language of § 20-4-206(1), MCA.

¶19 The District Court held—and the School District argues on appeal—that the School District's statutory obligation to "provide written notice by June 1" was excused by Arechaga's failure to inform the School District of her updated mailing address. As the District Court noted, it is a general rule that "[c]onstructive receipt and notice are chargeable to one who willfully avoids actual notice by refusing to accept a notice." 58 Am. Jur. 2d *Notice* § 28 (2012) (citing *Crenshaw v. Ga. Underwriting Ass'n*, 414 S.E.2d 915 (1992); *Walkenhorst-Newman v. Montgomery Elevator*, 37 S.W.3d 283 (Mo. Ct. App. 2000)). This follows the principle that "a person may not profit from his own wrongful act." *Grenfell*, ¶ 38. Recognizing this principle, we have held that the failure to claim a

8

certified letter does not constitute "*actual refusal to accept*" the written notice. *Grenfell*, ¶¶ 38, 45. Certified letters "that are returned 'unclaimed' are not evidence of a refusal to accept delivery" and do not impute "constructive knowledge" of the notice on the intended recipient. *Grenfell*, ¶ 39 (citing *Long v. Crum*, 267 N.W.2d 407, 411 (Iowa 1978)).

¶20    The record does not show that Arechaga willfully avoided or actually refused to accept service of the written notice. The District Court in fact found to the contrary. As noted, the School District did not require teachers to keep it apprised of changes to their mailing addresses. Arechaga testified that the vast majority of her communications with the School District occurred in person, by telephone, or by e-mail, and that it "didn't even occur" to her to send the School District her new mailing address. She testified that she was unaware prior to June 1, 2017, that the School District had attempted to notify her in writing of its decision; that she did not know the law required the School District to give her written notice by June 1; that had the School District told her it had a letter for her, she would have come to the school to pick it up; and that had the School District asked her to confirm her mailing address, she would have provided her updated address. The School District did not refute any of this testimony at the hearing and does not contest it on appeal.

¶21    The District Court acknowledged that Arechaga "did not take active steps, per se, to avoid notice" and that she "testified she did not attempt in any way to avoid receiving written notice of her termination." Because Arechaga did not purposefully avoid service of written notice or actually refuse to accept the notice, "constructive receipt and notice" are not chargeable to her. *See Grenfell*, ¶ 38; 58 Am. Jur. 2d *Notice* § 28 (2012).

¶22 The statute provides that a "teacher who does not receive written notice of reelection or termination is *automatically* reelected for the ensuing fiscal year." Section 20-4-206(1), MCA (emphasis added). Although Arechaga received written notice of the School District's decision on June 7, 2017, she did not receive it by the time of the "June 1 notice requirements." *See* §§ 20-4-206(1), (3), MCA. Under the plain language of the statute, Arechaga was "automatically reelected for the ensuing school fiscal year." *See* § 20-4-206(1), MCA. It is hard to imagine more "precision and certainty" than the "automatic" reelection of a teacher who does not "receive" written notice by a prescribed date. *See Citizens for a Better Flathead*, ¶ 59; § 20-4-206(1), MCA. The statute's use of the term "automatically" leaves "nothing to the exercise of discretion or judgment." *See Citizens for a Better Flathead*, ¶ 59. The School District had a "clear legal duty" to take the ministerial act of reelecting Arechaga as a teacher for the 2017-2018 school year. *See Citizens for a Better Flathead*, ¶ 59.

### B. Speedy and Adequate Remedy

¶23 "[O]nce a petitioner for a writ of mandate establishes a clear legal duty, the writ must be granted if no speedy and adequate remedy exists." *Belgrade Educ. Ass'n v. Belgrade Sch. Dist. No. 44*, 2004 MT 318, ¶ 20, 324 Mont. 50, 102 P.3d 517. "To constitute an adequate remedy, the alternative must be one that itself enforces the performance of the particular duty" that the applicant for a writ of mandamus seeks. *Jefferson Cnty. v. Dep't of Envtl. Quality*, 2011 MT 265, ¶ 30, 362 Mont. 311, 264 P.3d 715.

¶24 Arechaga contends that she has no speedy and adequate remedy at law other than a writ of mandamus. She points out that her collective bargaining agreement (CBA) does

10

not provide a remedy for disputes over the non-renewal of employment contracts for non-tenured teachers. She argues that Montana statutes do not provide for direct appeal of a school district's failure to comply with statutory requirements for non-renewal of a teaching contract. The School District counters that the ordinary legal remedy for Arechaga was a declaratory judgment action.

¶25 Arechaga's CBA provides a procedure for filing grievances, defined as disputes "as to the interpretation or application of terms and conditions contained in this agreement." The CBA contains no terms or conditions relating to the annual renewal or non-renewal of non-tenure teacher contracts. It thus does not provide any avenue for the relief that Arechaga seeks.

¶26 The statutes governing school districts' employment of teachers do not explicitly provide for judicial review of the non-renewal of annual contracts for non-tenured teachers. *See* §§ 20-4-201 to -208, MCA. Under § 20-4-206(3), MCA, a school district may, "[s]ubject to the June 1 notice requirements," decline to renew a non-tenured teacher's contract "with or without cause." We have held that non-tenured teachers have no "legally recognized property right in a new contract" and that "[n]owhere in . . . the statutes . . . is [the teacher] given a right to appeal her non-renewal." *Roos v. Kircher Pub. Sch. Bd. of Trs.*, 2004 MT 48, ¶ 11, 320 Mont. 128, 86 P.3d 39 (citing *Irving v. Sch. Dist. No. 1-1A*, 248 Mont. 460, 813 P.2d 417 (1991)). It thus appears that Arechaga has no adequate remedy under her CBA or the relevant statutes to compel the School District to renew her employment contract.

¶27 The School District's contention that Arechaga's appropriate remedy was a declaratory judgment action is not persuasive. A declaratory judgment action "simply pronounces the duty to be performed;" mandamus, in contrast, "commands performance." *Gallatin Cnty. v. D & R Music & Vending*, 201 Mont. 409, 413, 654 P.2d 998, 1000 (1982), *superseded by statute on other grounds*. A declaratory judgment action is not an "adequate remedy," because it does not "enforce[ ] the performance of the particular duty" that Arechaga seeks in her application for a writ of mandamus. *See Jefferson Cnty.*, ¶ 30; *see also Gallatin Cnty.*, 201 Mont. at 413, 654 P.2d at 1000 (stating that, when a party seeks to compel a public body to take an action, a writ of mandamus is "a more adequate remedy than a declaratory judgment").

¶28 Arechaga has demonstrated that she is entitled to the School District's performance of a "clear legal duty" to renew her contract for the 2017-2018 school year and that there is no other "speedy and adequate remedy" available to her apart from a writ of mandamus. *See Citizens for a Better Flathead*, ¶ 58.

**CONCLUSION**

¶29 For the reasons discussed, we conclude that the District Court erred when it held that Arechaga did not satisfy the requirements for mandamus. Finally, we are not convinced by the School District's argument that, if we reverse, "the method of delivering notice to school employees will be altered throughout Montana as school districts will be required to personally deliver every notice to avoid intentional or neglectful frustration of delivery." Nothing in this Opinion forecloses a school district from adopting specific policy language that obligates its employees to keep it apprised of their current addresses

and designates the employee's listed address as the agreed location for service of written notices. Such a policy in its faculty handbook would give the School District stronger footing from which to argue willful avoidance or refusal to accept written notice. Fundamentally, we are not at liberty to ignore an explicit statutory directive in order to carry out the School District's intended action.

¶30 The District Court's denial of Arechaga's application is reversed. The case is remanded for issuance of the requested writ of mandamus.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JAMES JEREMIAH SHEA