FILED

09/22/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0723

DA 19-0723

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 239

JOHN RICHARDS,

      Petitioner and Appellant,

  v.

TYLER GERNANT, Missoula County
Clerk and Treasurer,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
                  In and For the County of Missoula, Cause No. DV 19-0929
                  Honorable Shane A. Vannatta, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Shandor S. Badaruddin, Moriarity & Badaruddin, Missoula, Montana

        For Appellee:

            Kirsten H. Pabst, Missoula County Attorney, Anna Conley, Civil Chief
            Deputy, Missoula County Attorney's Office, Missoula, Montana

                        Submitted on Briefs:  July 15, 2020

                                  Decided:  September 22, 2020

Filed:

_____
                           Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1	John Richards (Richards) appeals from a November 13, 2019 Fourth Judicial District Court order denying Richards' petition for a writ of mandamus compelling Missoula County Clerk and Recorder Tyler Gernant (Gernant) to record Richards' Certificate of Survey (COS).  We affirm.

¶2	We address the following issue on appeal:

> *Whether Gernant has a clear legal duty to record a Certificate of Survey bearing language certifying that the subdivision qualifies for an exemption that the relevant reviewing authority has found to be inapplicable and has declined to approve.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3	Richards sought to divide property he owns in Missoula County.  He applied for a Boundary Line Relocation exemption to the Montana Subdivision and Platting Act under Title 76, chapter 3, MCA, from the Missoula County Community and Planning Services (CAPS).  Though the proposed division would contain entirely new lot lines, the number of new lots would be equivalent to the previous number of existing lots, such that there was no net gain in the number of lots.  In his application, Richards indicated that the "intended use of [the] tract(s)" was "residential" and that the purpose of the division was "to create five building parcels that comply with growth policy."  The request was approved at a May 9, 2019 public meeting.

¶4	Richards also sought an exemption to the Montana Sanitation Act, which is found under Title 76, chapter 4, MCA.  Richards raised Admin. R. M. 17.36.605(2)(a) (2014), which allows parcels where "no facilities will be constructed" to be exempted from

2

Sanitation Act review. On May 14 Missoula Deputy County Attorney Anna C. Conley responded via email to a question from Richards' counsel regarding the County's position on the proposed property division. She wrote that "[t]he plain language of that exception [under Admin. R. M. 17.36.605(2)(a) (2014)] makes it clear that it is not applicable here" because "it is undisputed that Mr. Richards intends to pursue residential development." She noted that one of the reasons for sanitation review was consumer protection, "that is, ensuring subsequent purchasers of the divided lots are aware of septic options on the lots."

¶5     On May 17, 2019, CAPS sent a letter to Richards confirming that he had been approved for the Boundary Line Relocation exception to the Subdivision and Platting Act. The letter, which was also sent to Missoula County Clerk and Recorder Gernant, went on to state that "[t]his approval only entitles the applicant to the Subdivision and Platting Act exemption(s) noted above." Under the "Agency Comment" section, the letter stated that the "Missoula City County Health Department commented that this project will require sanitation review or the citation of a qualifying exemption per 76-4 MCA." The letter went on:

> DEQ Review
> All exempt divisions of land are subject to DEQ review of parcels less than 20 acres, unless shown to be exempt from review under Title 76, Chapter 4. The Clerk and Recorder is prohibited from filing a division that does not meet the sanitation requirements of §76-4-122(2), MCA. The landowner is responsible for obtaining necessary sanitation approvals.

¶6     In a July 5, 2019 email, Daniel Fultz at the Missoula City/County Health Department (County Health) also informed Richards' consultants that Richards' property division was subject to sanitation review. In the email, Fultz noted that Richards had:

3

asserted, at [a] meeting, that he has email correspondence with DEQ staff that provides language to place on the survey, so that it is not subject to sanitation review. As you are all aware, our normal process and requirement is that any exemption language is included on the face of the survey, and that most exemptions are required to have an approval letter from our office. I'm unsure of what MCA [Richards] was referring to as he did not want to provide it. He also stated that he would not provide any correspondence from DEQ.

¶7 A July 11, 2019 email from County Health to Richards' consultants stated that "17.36.605(2)(a) is not an appropriate exemption citation for [the] tracts. . . . [T]he owner has indicated that the intention is to develop them, most likely with residential homes. That will require installation of sanitary facilities." The email went on:

Before the Department certif[ies] (by signing the survey) that this boundary line relocation complies with the Act, each proposed tract will have to gain sanitation approval, or an applicable exemption must be cited on the survey. The Clerk and Recorder is not allowed to file surveys that do not comply with the Sanitation Act (see MCA 76-4-122).

¶8 Richards' consultants responded: "Clearly we (Eli) anticipated this response. We were citing that exemption purely upon the request of our client. Thanks for the thorough response, hopefully it clarifies some things for [Richards]." In a follow up email, County Health provided examples of uses that might qualify under the exemption, such as park, pasture, or conserved land, as well as open space and property entirely within a floodplain. The email also contained a reminder that the exemption "cannot be used to evade the Sanitation Act."

¶9 Richards attempted to record a Certificate of Survey (COS) of his proposed property division with Gernant's office. Richards had affixed the following language to the COS:

I further certify that [the tracts] are exempt from sanitation review by the Department of Environmental Quality under the provisions of ARM

4

17.36.605(2)(a), to wit: "A parcel that has no facilities for water supply, wastewater disposal, storm drainage, or solid waste disposal, if no facilities will be constructed on the parcel."

¶10 The COS was not signed by County Health. Gernant's office relies upon the presence of a County Health signature to ensure truthfulness and accuracy of the claimed exemptions from sanitation review. The office checklist of requirements for recording an arriving COS contains a line for "City-County Health Department" and "Certificate of Approval" to be initialed by the relevant public official when approved. These lines were not initialed for Richards' COS and Gernant's office did not record the COS.

¶11 On August 26, 2019, Richards filed a petition for writ of mandamus in the District Court, seeking to compel Gernant to record Richards' COS. The District Court issued an order that Gernant record the COS or show cause for his failure to do so. Gernant filed a motion to dismiss.

¶12 In his response, Richards argued that his COS had complied with instructions found in a May 29, 2019 email from a member of the Department of Environmental Quality (DEQ), James Kujawa. The attached exhibit contained what appears to be a forwarded email from Kujawa, apparently part of the correspondence with DEQ that Richards had previously alluded to in communications with County Health. Richards pointed to language in the email citing Admin. R. M. 17.36.605(2) (2014) as the rule "[f]or placing the sanitary restrictions on the lots" and stating that "what must be written on the COS" is language certifying that the tracts are exempt from Sanitation Act review, thereby "plac[ing] a sanitary restriction on the lot or lots, that will have to be removed at some time in the future . . . ." Richards claimed that, because he had placed such certifying language

5

on his COS, he had complied with DEQ instructions and was entitled to have his COS recorded.

¶13 The County responded by noting that the email exhibit was accompanied by no foundation, did not show the inquiry to which Kujawa was responding, and failed to demonstrate that Richards was entitled to claim any such exemption. The email text provided in the exhibit consists of several block quotes of various legal provisions, separated by minimal explanation by Kujawa. The text begins abruptly, without greeting, and the exhibit is not accompanied by an affidavit attesting that the exhibit is a true, correct, or complete copy of the original message.

¶14 Richards' sur reply contested the characterization of the certifying language on his COS as "false," arguing that Richards "has certified that he does not plan to build anything on any of the parcels. He acknowledges that, at such time that a subsequent purchaser may wish to build on a recorded parcel, however, that purchaser will be required to obtain their own sanitary review if and when such an event occurs."

¶15 Following oral argument, the District Court dismissed the petition for writ of mandamus on November 13, 2019, finding that Gernant was not under a clear, non-discretionary, legal duty to record Richards' COS. This appeal followed.

## STANDARD OF REVIEW

¶16 We review district court decisions on the issuance of a writ of mandamus for correctness. *Boehm v. Park Cty.*, 2018 MT 165, ¶ 7, 392 Mont. 72, 421 P.3d 789; *Belgrade Educ. Ass'n v. Belgrade Sch. Dist. No. 44*, 2004 MT 318, ¶ 6, 324 Mont. 50, 102 P.3d 517.

6

## DISCUSSION

¶17 *Issue: Whether Gernant has a clear legal duty to record a Certificate of Survey bearing language certifying that the subdivision qualifies for an exemption that the relevant reviewing authority has found to be inapplicable and has declined to approve.*

¶18 Richards contends that Gernant had a clear legal duty to record Richards' COS, and that the District Court erred in dismissing Richards' petition for writ of mandamus to compel Gernant to do so. We agree with the District Court's conclusion that Gernant had no clear legal duty to record Richards' COS.

¶19 A court may issue a writ of mandamus to compel performance of an official duty where there is no "plain, speedy, and adequate remedy in the ordinary course of law." Section 27-26-102, MCA. Mandamus is appropriate only when the public official involved is under a "clear legal duty" to act. *O'Brien v. Krantz*, 2018 MT 191, ¶ 8, 423 P.3d 572, 392 Mont. 265 (internal quotation omitted). In other words, the official act sought to be compelled cannot be a "discretionary function." *Jeppeson v. Dep't. of State Lands*, 205 Mont. 282, 288, 667 P.2d 428, 431 (1983) (citation omitted).

¶20 Montana law imposes a general legal duty on the clerk and recorder to record authorized documents without delay. *See* § 7-4-2617(1-3), MCA ("When any instrument, paper, or notice authorized by law to be recorded is deposited for record . . . the clerk . . . shall record the instrument without delay . . . ."). However, to be "authorized by law," and therefore impose a clear legal duty on the clerk and recorder, a COS must satisfy the requirements of *both* the Subdivision and Platting Act under Title 76, chapter 3, MCA, *and* the Sanitation Act under Title 76, chapter 4, MCA. Exemption from the Subdivision

7

and Platting Act does not equate to exemption from the Sanitation Act. *See, e.g.,* § 76-4-125(1), MCA ("A subdivision excluded from the provisions of chapter 3 must be submitted for review according to the provisions of this part . . . .").

¶21 Gernant does not dispute that Richards has complied with the Subdivision and Platting act by certifying—with CAPS' approval—that the purpose of the division of land was to relocate common boundary lines, such that proposed tracts fell within a statutory exemption to the Subdivision and Platting Act. *See* § 76-3-207 (1)(a), MCA. However, Gernant contends that Richards' COS did not comply with the requirements of the Sanitation Act and that Gernant was therefore under no legal duty to record.

¶22 In the case of a COS that does not comply with the Sanitation Act, Gernant is, in fact, under a clear legal duty *not* to record. Relevant here is § 76-4-122(2)(c), MCA, which provides that:

> (2) A county clerk and recorder *may not accept* a . . . certificate of survey . . . subject to review under this part for filing until one of the following conditions has been met:
>
> .   .   .
>
> (c) the person wishing to file the . . . certificate of survey . . . has placed on the . . . certificate of survey . . . an *acknowledged certification that the subdivision is exempt* from review under this part. The certification must quote in its entirety the wording of the applicable exemption.

(Emphasis added.)

¶23 The critical question in determining whether mandamus is appropriate here, then, is whether Richards complied with the requirement that he place an "acknowledged certification that the subdivision is exempt from review" on his COS. Richards argues that

8

he did, as his COS contained the language: "I further certify that [the tracts] are exempt from sanitation review by the Department of Environmental Quality under the provisions of ARM 17.36.605(2)(a), to wit: 'A parcel that has no facilities for water supply, wastewater disposal, storm drainage, or solid waste disposal, if no facilities will be constructed on the parcel.'"

¶24 On appeal, Richards does not point to evidence suggesting that he actually qualified for or received the claimed Sanitation Act exemption under Admin. R. M. 17.36.605(2) (2014), which reads:

> The *reviewing authority may exclude* the following parcels created by divisions of land from review under Title 76, chapter 4, part 1, MCA, unless the exclusion is used to evade the provisions of that part:
> (a) a parcel that has no facilities for water supply, wastewater disposal, storm drainage or solid waste disposal, if *no facilities will be constructed* on the parcel . . . .

(Emphasis added.)

¶25 Indeed, the record convincingly demonstrates that Richards did not qualify for the "no facilities" exemption and that the reviewing authority declined to grant it to him.[1] "Facilities" are defined as "public or private facilities for the supply of water or disposal of sewage, storm water, or solid waste and any pipes, conduits, or other stationary method by which water, storm water, sewage, or solid wastes might be transported or distributed." Admin. R. M. 17.36.101(17) (2016). As examples of tracts that might qualify for the "no

---

[1] In his sur-reply below, Richards seemed to argue that the "no facilities" exception self-executed with nothing more than Richards' present intent, which his counsel claimed was not to develop the lots himself. As the District Court found, the text of Admin. R. M. 17.36.605(2) (2014) makes clear that it is the "reviewing authority," not the applicant, who determines whether the given property division qualifies for, and will be approved for, the exemption.

facilities" exemption, County Health describes park land, pasture land, gravel pits, and land with conservation easements or completely within a floodplain. Richards indicated in his Boundary Line Relocation application that the plots were intended to be residential. For this reason, the reviewing authority, County Health, did not issue an approval letter or sign the COS, as is their customary procedure for qualifying subdivisions. County Health instead informed Richards that he did not qualify for the claimed exemption, an outcome Richards' own consultants anticipated.

¶26 Richards' argument here seems to be that he (a) complied with instruction from DEQ and (b) met the statutory requirement that he "certif[y]" to having an exemption, regardless of whether such a certification was truthful and accurate. We find both arguments unconvincing.

¶27 Richards does not explain how his supposed compliance with what he claims were "instructions"[2] in a May 29, 2019 email from a member of the DEQ is relevant here. Gernant's legal duties are governed by Montana law, which is not affected by this email. Nothing in the email text provided here suggests that Richards proposed division had been reviewed by the appropriate authority[3] or approved for an exemption under

---

[2] We do not view the provided email text as instructing Richards to do anything, let alone to certify himself as having an exemption under Admin. R. M. 17.36.605(2)(a) (2014).

[3] Richards does not contest the District Court finding that County Health, pursuant to a contract with DEQ, is the authority carrying out the relevant sanitation review. Montana law allows for designation of local health departments, such as County Health, as the "reviewing authority" under Admin. R. M. 17.36.605(2)(a) (2014). *See* Admin. R. M. 17.36.101(47) (2016); §§ 76-4-102(17), 104(3)(a), MCA. Richards makes no argument that a member of DEQ, rather than County Health, could function as a "reviewing authority" and issue an exemption approval overriding County Health.

Admin. R. M. 17.36.605(2) (2014). In fact, the provided email text makes no mention of Richards' specific tracts at all but only makes some general statements about the review process, citing to various legal provisions. Furthermore, without foundation, the evidentiary value of the provided email text is minimal. Richards' attempt to rely on this vague communication—shared for the first time in litigation—after repeated and detailed explanation by the reviewing authority that he was not entitled to claim the exemption, rings hollow.

¶28 Richards' second argument seems to be that, because he affixed language "certify[ing] that [the tracts] are exempt from sanitation review by [DEQ] under the provisions of ARM 17.36.605(2)(a)" to his COS, he has complied with the requirements of § 76-4-122(2), MCA, such that Gernant should be compelled to record the COS. Section 76-4-122(2), MCA, provides that the county clerk "may not accept a . . . certificate of survey" until "the person wishing to file the . . . certificate of survey . . . has placed on the . . . certificate of survey . . . an acknowledged certification that the subdivision is exempt from review under this part" along with a citation to the claimed exemption. On appeal, Richards seemingly makes no argument that this certification was truthful or accurate, implying instead that neither is required here. [4]

---

[4] Below, Richards took issue with the characterization of his certification as "false," alleging that his present intent was not to develop, such that he could truthfully claim exemption under Admin. R. M. 17.36.605(2). As noted above, that exemption is not self-executing and requires discretionary action by a reviewing authority to take effect. Richards' counsel and consultants were repeatedly warned that he was not entitled to claim that exemption.

11

¶29 When constructing statutes, our goal is to ascertain the will of the Legislature. *Friends of the Wild Swan v. Dep't of Nat. Res. & Conservation*, 2005 MT 351, ¶ 13, 330 Mont. 186, 127 P.3d 394. Certification implies truthfulness. The Legislature cannot plausibly have intended § 76-4-122(2), MCA, to impose a clear legal duty upon a clerk to record a COS bearing a "certification" that the subdivision is exempt when the relevant reviewing authority has made clear that it is not and has therefore declined to issue an approval.

¶30 The Missoula County Clerk and Recorder office relies on the signature of County Health on a COS to ensure the truth and accuracy of sanitation review exemptions. Pursuant to Missoula County Resolution No. 2016-004, Gernant's office must verify all required signatures have been obtained and notarized and must confirm that a COS is accompanied by a checklist with the initials of the appropriate officials from each of the approving departments listed. Here, this procedure allowed Gernant to determine that Richards' COS did not contain a truthful and accurate certification of exemption from Sanitation Act review. Under §§ 76-4-122(2) and 7-4-2617, MCA, Gernant had no duty to record Richards' COS bearing a certification of a Sanitation Act exemption that he had not been approved to claim.

**CONCLUSION**

¶31 Because Richards has not demonstrated that Gernant was under a clear legal duty to record a COS bearing a certification of exemption from sanitary review that Richards was not approved for, the District Court was correct in dismissing the petition for writ of mandamus.

12

¶32   Affirmed.


                                        /S/ MIKE McGRATH


We Concur:

/S/ DIRK M. SANDEFUR
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JAMES JEREMIAH SHEA