Justice Jim Rice delivered the Opinion of the Court.
***87 ¶1 The Montana Department of Public Service Regulation ("PSC" or "Commission") and Bigfoot Dumpsters & Containers, LLC ("Big Foot"; collectively, "Appellants") appeal a writ of prohibition and a writ of mandate issued by the First Judicial District Court, Lewis and Clark County. The District Court's order enjoined PSC from propounding discovery in the dispute between Big Foot and Petitioners Allied Waste Services of North America, LLC, d/b/a Republic Services of Montana, and Montana Waste Systems, Inc., d/b/a North Valley Refuse (collectively, "Petitioners"). The District Court's writ of mandate removed the PSC from the matter and ordered appointment of an independent hearing examiner to preside over the case. We affirm in part and reverse in part, restating the issues as follows:
1. Did the District Court err by issuing a writ of prohibition barring the PSC from propounding discovery?
2. Did the District Court err by issuing a writ of mandate requiring the PSC to appoint an independent hearing examiner?
FACTUAL AND PROCEDURAL BACKGROUND
¶2 The PSC regulates garbage haulers in Montana by requiring haulers to obtain a Class D motor carrier certificate of public convenience or necessity before engaging in the hauling business. Section 69-12-314, MCA. The process of obtaining a Class D carrier certificate begins by filing an application with the PSC and, subject to certain requirements, any authorized Class D carrier *465 may protest the application of a garbage hauler seeking license to operate. Section 69-12-321, MCA ; Admin. R. M. 38.3.405.
¶3 On January 8, 2018, Big Foot applied for a Class D certificate of public convenience and necessity, seeking to operate a garbage hauling business in Flathead County, Montana. On February 12, 2018, Petitioners, who are Class D carriers authorized to provide garbage hauling services within Flathead County, filed protests to Big Foot's application. The PSC issued a Procedural Order on March 6, 2018, providing a schedule for the proceeding, including dates and procedures for discovery requests, which the PSC refers to as "data ***88 requests."[1] The PSC's order also appointed staff attorneys Jennifer Hill-Hart and Jeremiah Langston to "act as examiners for the limited purpose of disposing of discovery disputes (including objections to data requests and motions to compel) and motions for protective order in this proceeding." The order provided instructions for how the parties should serve and respond to discovery requests, but did not describe the PSC as one of the parties or indicate the PSC would submit discovery requests.
¶4 On March 19, 2018, Hill-Hart served discovery requests upon Petitioners on behalf of the PSC, with instructions to "provide responses on or before April 9, 2018."[2] Later that day, Big Foot served discovery requests upon Petitioners, who allege that the requests, "in part, mirrored" those served by the PSC. Concerned by an appearance of improper coordination or ex parte contact between Big Foot and the PSC, Petitioners filed a petition with the District Court seeking, among other things, immediate review of PSC's conduct, a temporary restraining order (TRO) and preliminary injunction, a writ of prohibition, and a writ of mandate. Petitioners argued that by "propounding discovery, and inserting itself in an advocacy role," the PSC has improperly undertaken "a dual advocate-judge role," and was thus violating Petitioners' due process rights. Petitioners asked for prompt relief from the District Court, on the ground that answering the PSC's discovery requests would irreparably harm Petitioners and unfairly strengthen Big Foot's case, and requested "relief barring the PSC from imposing deadlines or procedures" pursuant to the Procedural Order.
¶5 PSC and Big Foot opposed the petition, arguing a TRO and preliminary injunction were unwarranted because "adequate relief would be provided by judicial review of final agency action," and that the PSC is not "bound to a purely adjudicative role" and was simply carrying out its investigative duties by issuing discovery. The PSC "reject[ed] the false dichotomy presented by Petitioners that the Commission must occupy either a purely adjudicatory or advocacy role," arguing instead that "the Commission occupies a role in between ***89 in which it regulates in the public interest." After responding to the request for a TRO, the PSC "reserve[d] the opportunity to respond more fully to any other claims in this Petition at the appropriate time and as set by this Court." On May 4, 2018, the District Court granted a TRO staying all proceedings before the PSC and, having found that Petitioners established a prima facie case for a preliminary injunction, scheduled a show cause hearing for May 16, 2018. The PSC withdrew its discovery to Petitioners on May 14, 2018, but the case proceeded to hearing.
¶6 Investigation revealed that Big Foot's attorney, Francesca diStefano, and PSC staff attorney Hill-Hart engaged in email correspondence before and after the initial discovery requests were issued on March 19. By affidavit, diStefano explained that on or about February 20, she contacted Hill-Hart to obtain public information held by the PSC that had not yet been made available online. She sought and received copies of discovery requests propounded in other Class D carrier disputes and used them "as a framework" to prepare Big Foot's discovery requests in this case. Although the parties agree that diStefano did not copy the PSC's discovery *466 requests, Petitioners were not included in the email communication between diStefano and Hill-Hart, rendering it ex parte .
¶7 The District Court found the diStefano/Hill-Hart emails "referred specifically to the conducting of discovery in this matter" and that "Hill-Hart provided Big Foot's counsel with suggested data requests to serve on Petitioners." As Petitioners point out, Hill-Hart provided discovery examples to diStefano that Hill-Hart deemed relevant to Big Foot's case. In response to diStefano's February 20, 2018 inquiry about whether Big Foot's case had been assigned a docket number, Hill-Hart replied, "Here is the Big Foot docket (T-18.2.PCN), as well as some data request and response examples from another garbage case before the Commission." On March 15, 2018, independent of an inquiry on the record as here constituted, Hill-Hart emailed diStefano a copy of a recent district court decision, which Hill-Hart described as "pertaining to garbage regulation in Montana, affirming the Commission's Order 7477." Hill-Hart's email of April 12, 2018, read in part: "Per your request I have included copies of documents related to discovery requests, objections, and Commission decisions on that type of matter," and included several documents from a related case for which she provided an explanation concerning their relevance to the pending ***90 case.[3]
¶8 At the hearing on May 16, counsel for one of the Petitioners summed up the proceeding, stating, "[a]t this time what we're asking your Honor to do is issue a preliminary injunction during the pendency of this matter and we can submit briefings to your Honor on the ultimate issue of whether a hearing examiner is appropriate." She continued, "I think that under Supreme Court precedent we're not supposed to reach the ultimate issues today." Further discussion was had about submission of additional briefing on the merits of appointing an independent hearing examiner. The District Court later asked, "[w]hat do you folks think I have today? I just decide the preliminary injunction?," to which the parties concurred.
¶9 The District Court issued an Order on Petition for Preliminary Injunction and Writ of Mandate on July 9. The court found Hill-Hart "provid[ed] guidance to Big Foot as to how to succeed in a discovery dispute between the parties." Noting Hill-Hart had been designated by the PSC to resolve discovery disputes and to issue the PSC's discovery requests in this matter, the District Court determined the ex parte communication with diStefano was "inappropriate and violated both the Administrative Procedures Act and the Commission's rule barring ex parte communication." The District Court made two primary rulings. First, it ruled that "the Commission was without authority, either by administrative rule or its own procedural rule, to issue data requests" and had "intertwin[ed]" its roles as "adjudicator and advocate." Consequently, the court issued a writ of prohibition to bar the PSC from propounding discovery requests and relieve Petitioners from responding to the discovery.
¶10 Second, despite the apparent understanding that additional briefing would be submitted on the issue, the District Court granted Petitioners' request for issuance of a writ of mandate removing the matter from the PSC's purview and assigning it to an independent hearing examiner. The District Court found that Hill-Hart's issuance of discovery requests and ex parte communication with Big Foot's counsel had imputed bias on the part of the entire Commission and violated Petitioners' due process rights, concluding, "the procedural deficiencies discussed herein have so tainted the Commission's review of Big Foot's application and Petitioners' protests that the remedy ***91 should be the appointment of an independent hearing examiner."
¶11 The PSC and Big Foot appeal. Additional facts are discussed herein.
STANDARD OF REVIEW
¶12 A district court's decision to issue or deny a writ of prohibition is a conclusion of law regarding the application of a *467 statute, which we review for correctness. Wright v. Mahoney , 2003 MT 141, ¶ 5, 316 Mont. 173, 71 P.3d 1195. Likewise, a district court's decision on whether to grant a writ of mandamus is also a legal conclusion that we review for correctness. Boehm v. Park Cnty. , 2018 MT 165, ¶ 7, 392 Mont. 72, 421 P.3d 789.
DISCUSSION
¶13 1. Did the District Court err by issuing a writ of prohibition barring the PSC from propounding discovery?
¶14 The PSC does not challenge the writ of prohibition on appeal, instead conceding that, "[g]iven the procedural morass of the underlying administrative contested case proceeding, the Commission agrees with the District Court that a 'procedural reset' was necessary in addressing Big Foot's Application." The PSC has withdrawn its discovery requests. Big Foot's appeal challenges the writ of prohibition, but only as part of its broader challenge to the District Court's issuance of a preliminary injunction, which Big Foot argues was improperly issued upon speculative harm, inadequate findings, and without requiring exhaustion of administrative remedies before the PSC.
¶15 The parties' arguments require clarification of the procedural posture of the case. The Petitioners made multiple requests for relief to the District Court, including for preliminary injunction, supervisory control, writ of prohibition, writ of mandate, and immediate judicial review under MAPA. While the District Court's July 9 Order was entitled "Order on Petition for Preliminary Injunction and Writ of Mandate," the order did not enter findings and conclusions relative to the standards for issuance of a preliminary injunction. Instead, the "Remedy" section of the order addressed only the writs of prohibition and mandate, and, consistently, the concluding "Order" section included two numbered paragraphs, the first prohibiting the Commission from propounding discovery, and the second requiring the Commission to appoint an independent hearings examiner. Accordingly, we undertake review of this matter only as an appeal of a writ of prohibition and a writ of mandate, and apply the standards ***92 of review appropriate thereto, rather than appeal of a preliminary injunction.
¶16 That narrows Big Foot's appellate challenge to the writ of prohibition to an administrative exhaustion argument. Big Foot emphasizes the general rule that a party must "exhaust[ ] all administrative remedies available within the agency" before seeking judicial review under MAPA, citing § 2-4-702(1), MCA, and the cases applying that provision, such as Gilpin v. State , 249 Mont. 37, 812 P.2d 1265 (1991). However, while Petitioners sought immediate judicial review under § 2-4-701, MCA, the statutory exception to the administrative exhaustion requirement, the case proceeded before the District Court, and ultimately concluded, as a writ matter that challenged the jurisdiction of the PSC to proceed on Big Foot's application, not as immediate judicial review of an agency action or ruling. As such, exhaustion of administrative remedies or, alternatively, the need for Petitioners to satisfy the exception to exhaustion to obtain immediate judicial review under § 2-4-701, MCA, including carrying the "heavy burden to demonstrate that judicial review of the final agency decision would not provide an adequate remedy," Wilson v. Dep't of Pub. Serv. Regulation , 260 Mont. 167, 172, 858 P.2d 368, 371 (1993), was not at issue here. Rather, the issue was whether the standards had been satisfied for issuance of a writ of prohibition and, as discussed below, a writ of mandate.
¶17 Because there are no remaining appropriate arguments challenging the writ of prohibition on appeal, we affirm it summarily. A writ of prohibition "arrests the proceedings of any tribunal, corporation, board, or person exercising judicial functions when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board, or person." Section 27-27-101, MCA. It may be issued when "there is not a plain, speedy, and adequate remedy in the ordinary course of law." Section 27-27-102, MCA. Here, ex parte communication between a PSC lawyer appointed as examiner for discovery disputes and counsel for Big Foot occurred in violation of § 2-4-613, MCA, and the PSC lawyer then propounded discovery *468 to the Petitioners.[4] Thus, Petitioners sought the writ to prohibit the PSC from ***93 submitting discovery, for which there was no adequate appellate remedy. The PSC withdrew its discovery requests prior to the hearing on the writ and does not challenge the writ's issuance on appeal. While the PSC asserts, as an aside, that it has investigatory authority to propound discovery, that issue has not been raised or briefed on appeal, and we do not address it.[5] It is enough that the Procedural Order entered in the case did not provide that the PSC would be propounding its own discovery, and the PSC's counsel, a designated hearing officer, entertained unlawful ex parte communications with Big Foot's counsel. We have held that the PSC is "not exempt from the constitutional restraints of due process requirements" and must ensure that all litigants receive "a fair and open hearing" as guaranteed by the Fourteenth Amendment. Mont. Power Co. v. Pub. Serv. Comm'n , 206 Mont. 359, 368-69, 671 P.2d 604, 609-10 (1983). The writ of prohibition was properly issued to ensure that.[6]
¶18 2. Did the District Court err by issuing a writ of mandate requiring the PSC to appoint an independent hearing examiner?
¶19 A writ of mandate, or mandamus, is the "counterpart" to the writ of prohibition. Awareness Grp. v. Bd. of Trs. of Sch. Dist. No. 4 , 243 Mont. 469, 475, 795 P.2d 447, 451 (1990) (citing § 27-27-101, MCA ). While the purpose of a writ of prohibition is to arrest a proceeding, the purpose of a writ of mandate is to compel performance of a duty or entitlement. Sections 27-27-101 and 27-26-102, MCA. "A writ of mandate is an extraordinary remedy available in only rare cases." Boehm , ¶ 9 (internal quotations and citation omitted). Section 27-26-102, MCA, sets forth two requirements, which this Court has summarized into two essential questions that must be answered when determining whether an action can be compelled by a writ of mandate: 1) "whether the act sought to be compelled is one which the law specially enjoins as a duty resulting from an office, trust or station" and 2) "whether there is a plain, speedy and adequate remedy in the ordinary course of law." State ex rel. Thomas v. Dist. Court , 224 Mont. 441, 443, 731 P.2d 324, 325 (1986) (internal quotations omitted); § 27-26-102, MCA. As we explained in Thomas , "A negative answer to the ***94 first question bars the issuance of the writ, and, irrespective of the answer to that question, an affirmative answer to the second, divests the court of authority to issue it." Thomas , 224 Mont. at 443, 731 P.2d at 325 (internal quotation omitted).
¶20 We simply conclude that this case did not require the "extraordinary remedy," Boehm , ¶ 9 (internal quotations omitted), of a writ of mandate disqualifying the entire PSC and ordering appointment of an independent hearing examiner to hear the case. The actions that caused Petitioners to seek relief from the District Court were taken by the PSC's counsel, Hill-Hart. The discovery propounded to Petitioners by Hill-Hart has been withdrawn and further prohibited by the writ of prohibition. Additionally, Hill-Hart no longer works for the Commission and thus, any alleged bias on her part has been removed from the case. The PSC is a unique agency, governed by five independently elected commissioners. There is no evidence in the record suggesting that any of the Commissioners themselves engaged in the improper ex parte communications or were involved in any other inappropriate actions toward the Petitioners. We find the authority cited for removal of the entire Commission, based upon the independent actions of a staff member, to be thin, and the remedy under *469 these circumstances to be overbroad. Without any further demonstration of bias or inappropriate conduct by the Commissioners, the PSC should be permitted to continue to exercise its authority in the case.
¶21 PSC and Big Foot have argued at length that the writ of mandate was issued in error because the District Court reached the issue prematurely, prior to briefing on the merits of the request, and failed to follow the applicable administrative procedures provided by MAPA, particularly § 2-4-611(4), MCA, governing claims of "personal bias, lack of independence, [and] disqualification by law" against a "hearing examiner or agency member." However, having reversed the writ of mandate on other grounds, we do not reach the Appellants' procedural and administrative exhaustion arguments. Given the Petitioners' allegations of impropriety, we conclude they properly sought a writ of prohibition from the District Court.
¶22 The writ of prohibition is affirmed, the writ of mandate is reversed, and this matter is remanded to the PSC for further proceedings.
We concur:
MIKE McGRATH, C.J.
BETH BAKER, J.
LAURIE McKINNON, J.
INGRID GUSTAFSON, J.

PSC's order explained, "The exchange of information among parties pursuant to data requests is the primary method of discovery in proceedings before the [C]ommission." Admin. R. M. 38.2.3301(2).

The District Court later found that the PSC also served discovery requests upon Big Foot.

The District Court noted that the diStefano/Hill-Hart emails referenced telephone communications between the two attorneys, but the record here contains no information about the content of these calls.

Section 2-4-613, MCA, provides that "the person or persons who are charged with the duty of rendering a decision or to make findings of fact and conclusions of law in a contested case, after issuance of notice of hearing, may not communicate with any party or a party's representative in connection with any issue of fact or law in the case except upon notice and opportunity for all parties to participate."

The PSC cites Admin. R. M. 38.2.601, which provides "[t]he commission staff shall have the full rights and responsibilities of parties under these rules."

Northwestern Energy has filed an amicus curiae brief, urging the Court to determine the constitutionality of PSC's discovery procedures. Many of these arguments were not made below and we decline to reach them here.