

ORIGINAL

DA 23-0036

FILED

09/20/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0036

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 176

WHITEFISH 57 COMMERCIAL, LLC and
RIMROCK COMPANIES, LLC,

Plaintiffs and Appellants,

v.

CITY OF WHITEFISH,

Defendant and Appellee.

FILED

SEP 2 0 2023

Bowen Greenwood
Clerk of Supreme Court
State of Montana

APPEAL FROM:  District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV-21-1349B
Honorable Robert B. Allison, Presiding Judge

COUNSEL OF RECORD:

For Appellants:

Sean S. Frampton, Frampton Purdy Law Firm, Whitefish, Montana

For Appellee:

Angela K. Jacobs, City Attorney, Whitefish, Montana

Submitted on Briefs: June 28, 2023

Decided: September 20, 2023

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Whitefish 57 Commercial, LLC and Rimrock Companies, LLC (collectively "Appellants") appeal from the December 16, 2022 District Court Order granting the City of Whitefish's motion for summary judgment and affirming the Whitefish City Council's decisions to deny a conditional use permit (CUP) and to grant Resolution 21-43.

¶2 We restate the issue on appeal as follows:

*1. Whether the District Court erred by granting the City of Whitefish's motion for summary judgment and affirming the Whitefish City Council's denial of Appellants' request for a conditional use permit to build a hotel.*

¶3 We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Whitefish 57 Commercial, LLC is a Montana company and owns property at 21 Hedman Lane, Whitefish, Montana. Rimrock Companies, LLC is a Florida company and was the applicant for the development project at issue.

¶5 In July 2019, Appellants applied for a subdivision application. Appellants proposed to divide the property into five separate lots and develop an 85-room hotel on one of the lots. As part of the application process, Appellants hired a traffic engineer to study the anticipated effect on traffic. The engineer's report stated there would be minimal impact on traffic on Highway 93 South. The Montana Department of Transportation (MDT) concluded the subdivision did not warrant a Traffic Impact Study (TIS). Accordingly, the Whitefish City Council (the Council) approved the subdivision on September 16, 2019.

2

¶6 In August 2021, Appellants applied for a CUP to develop a hotel on Lot 4 of the subdivision. The lots were zoned Secondary Business, or WB-2. In this zone, hotels are a conditional use. In response to the permit application, the City Planning Board prepared Staff Report WCUP 21-19. The Staff Report analyzed the development's adherence to the Whitefish Zoning Regulations and recommended approval of the permit.

¶7 On October 4, 2021, the Council held a public hearing on the development project. Two council members expressed concern over the traffic impact of the project. Ultimately, the Council postponed review of the CUP to October 18, 2021. During the second hearing, the Council adopted Resolution 21-43 that denied the permit.

¶8 Appellants appealed the Council's decision to the Eleventh Judicial District Court of Montana. The parties filed cross motions for summary judgment. Appellants claimed the Council abused its discretion when it denied their CUP. The City of Whitefish asserts the denial was proper. The District Court granted summary judgment in favor of the City of Whitefish. Whitefish 57 and Rimrock appeal.

## STANDARD OF REVIEW

¶9 This Court reviews a district court's summary judgment ruling de novo for conformance to the applicable standards specified in M. R. Civ. P. 56. *Dick Anderson Constr., Inc. v. Monroe Prop. Co.*, 2011 MT 138, ¶ 16, 361 Mont. 30, 255 P.3d 1257. Summary judgment is proper when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3).

¶10 This Court reviews zoning decisions based on whether the zoning authority abused its discretion. *Town & Country Foods, Inc. v. City of Bozeman*, 2009 MT 72, ¶ 13, 349

3

Mont. 453, 203 P.3d 1283. An abuse of discretion occurs when a decision is "so lacking in fact and foundation that it is clearly unreasonable." *Town & Country Foods, Inc.* ¶ 13.

## DISCUSSION

¶11 *1. Whether the District Court erred by granting the City of Whitefish's motion for summary judgment and affirming the Whitefish City Council's denial of appellants' request for a conditional use permit to build a hotel.*

¶12 Appellants challenge the Council's denial of their CUP to build an 85-room hotel. Appellants primarily contest two issues contained in the Council's Resolution denying the permit—that the hotel did not conform to the Growth Policy set out in the Whitefish City Code and that the hotel could have a negative impact on traffic in that area.

**Growth Policy**

¶13 Sections 1(a) and 1(g) of the City Council's Resolution 21-43 state:

> **[1(a).] Growth Policy Compliance:** The proposed CUP is not in compliance with the Growth Policy because the proposed project i[n] this location does not match the scale, character, small town feel, and address the community needs and challenges as outlined in the City County Growth Policy.

> **[1(g).] Neighborhood/Community Compatibility;** The proposed development may not be compatible with the surrounding neighborhood because of the structural bulk and mass of the building and its proximity to single-family homes and undeveloped open space.

Appellants claim the Council lacks factual support for these findings. Appellants contend the proposed hotel complies with the Growth Policy because Whitefish's economy is largely based on tourism. Appellants also assert Council members based their denial on a single phrase from the Growth Policy that calls for maintaining a small-town feel.

4

¶14 The Whitefish City Code places the burden on the applicant to prove the conditional use permit satisfies the required criteria. WCC § 11-7-8(K). However, even if the applicant demonstrates compliance, "[t]he granting of a conditional use permit is a matter of grace, resting in the discretion of the City Council and a refusal is not the denial of a right, conditional or otherwise." WCC § 11-7-8(K). Further, this Court has previously held "decisions related to permitting, zoning, and variances are discretionary decisions, not ministerial tasks." *Boehm v. Park Cty.*, 2018 MT 165, ¶ 15, 392 Mont. 72, 421 P.3d 789; *see also Beasley v. Flathead Cnty. Bd. of Adjustments*, 2009 MT 120, ¶ 18, 350 Mont. 171, 175, 205 P.3d 812, 815 (the denial of a conditional use permit is a discretionary act); *State ex rel. Galloway, Inc. v. Great Falls*, 211 Mont. 354, 359, 684 P.2d 495, 498 (1984) (a city has no legal duty to approve a variance because it is purely discretionary); *Citizens for a Better Flathead v. Bd. of Cnty. Comm'rs*, 2016 MT 325, ¶ 59, 385 Mont. 505, 528, 386 P.3d 567, 583 (zoning is legislative rather than ministerial). With that in mind, we turn to whether the Council abused its discretion when it decided the proposed hotel does not conform to the Growth Policy.

¶15 The Council has discretion to grant or deny a CUP if the decision is not "so lacking in fact and foundation that it is clearly unreasonable." *Town & Country Foods, Inc.* ¶ 13. Here, at the October 18, 2019 public hearing, the Council quoted language in the Growth Policy stating "[t]he citizens of Whitefish value the scale, character, and small town feel of the community and will preserve those values as the community grows[,]" and "[w]e believe that good growth provides us with the means to address community needs

and challenges such as affordable housing and infrastructure development, and does not exacerbate them." The Council used these provisions to analyze whether the proposed hotel would fit the needs and character of the area.

¶16 Additionally, the record contains several written comments from community members expressing concern with the proposed development. One letter expressed disappointment over the addition of another hotel in town instead of something more culturally enriching. Another letter stated the number of hotels and condos is mind numbing and pleaded the Council consider the climate burdens of more development before approving more generic projects. One letter questioned whether this was the right time for a hotel. Finally, a neighboring community member expressed concern about traffic from the hotel encroaching their property.

¶17 The Council used its discretionary powers to determine that, per the language of the Growth Policy, the proposed hotel did not fit the City's vision for that area. Backed by community input and the Growth Policy, we cannot conclude its denial of Appellants' application was so lacking in fact and foundation that it was clearly unreasonable. *Town & Country Foods, Inc.* ¶ 13. Thus, the City Council did not abuse its discretion in this regard.

**Traffic Concerns**

¶18 Appellants next challenge the findings from the Council's Resolution 21-43 relating to the proposed development's impact on traffic. Findings 1(c)(ii), 1(d)(ii), 1(e)(ii), and 1(f)(i) of Resolution 21-43 state in relevant part:

6

[1(c)(ii).] Access to the site may not be adequate because there is not a stoplight at the intersection of Highway 93 South and Hedman Lane. Vehicles traveling north and turning left on Hedman Lane to access the site will have to cross two lanes of southbound traffic which is often heavy in certain months, particularly the summer months when tourism is high. Vehicles leaving the site traveling north will also have to cross two lanes of southbound traffic. These circumstances could create adverse access issues given the ADT (average daily trips) is estimated at 711.

[1(d)(ii).] Traffic circulation may not be adequate because there is not a stoplight at the intersection of Highway 93 South and Hedman Lane.

[1(e)(ii).] Although all street and frontage improvements have been installed within the development, Highway 93 South, which would [sic] used to access the site, may not be adequate because it does not have a stoplight at its intersection with Hedman Lane and experiences high traffic, particularly in the summer months.

[1(f)(i).] The proposed development may generate excessive traffic. The ADT (average daily trips) is estimated at 711, which could contribute to adverse traffic conditions on Highway 93 South and Spokane Avenue, especially during the summer months when tourism is high. The traffic analysis indicates that approximately 70% of the 711 trips will proceed north toward the downtown. Highway 93 South turns into a two-lane roadway at 13th Street East as traffic heads north, potentially exacerbating the negative traffic impacts.

¶19    Appellants argue the Council's findings of traffic concerns lack factual basis to support the permit denial. Specifically, Appellants take issue with findings 1(c)(ii), 1(d)(ii), 1(e)(ii), and 1(f)(i) of Resolution 21-43, set forth above. These provisions cite concerns about traffic safety, including: lack of a stoplight at the intersection of Highway 93 South and Hedman Lane; vehicles will have to cross two lanes of traffic when entering and exiting the hotel; and the additional ADT from the hotel is expected to be 711. Appellants assert the only evidence in the record about traffic is the engineer's report stating the impact on traffic would be minimal. Additionally, Appellants assert the Council

7

failed to consider the determination by MDT that the traffic impact of the proposed hotel would be so insignificant it did not warrant a TIS.

¶20 Denial of a CUP is a discretionary act, *Beasley*, ¶ 18, which if not "so lacking in fact and foundation that it is clearly unreasonable[,]" is not an abuse of discretion. *Town & Country Foods, Inc.* ¶ 13. Here, the Council based its denial of Appellants' application, in part, on the increased traffic expected to result from the hotel. The Council was not bound by the MDT traffic report. Just because the MDT approves a traffic report does not mean the City Council must also. As we held in *Christianson v. Gasvoda*, 242 Mont. 212, 215, 789 P.2d. 1234, 1236 (1990), commissioners or council members are not bound by expert testimony if it conflicts with their own personal experience. In *Christianson*, the Board of County Commissioners denied subdivision approval based on factors such as testimony at Board hearings, letters submitted by members of the community, and "personal observations of the problems" at the subdivision location. *Christianson*, 242 Mont. at 214-15, 789 P.2d at 1236. Here, the City Council used its own observations to conclude that a hotel in this area could exacerbate traffic. For example, the City Council noted there was no stoplight at the intersection of Hedman Lane and Highway 93 South. The Council looked at the engineer's traffic report and concluded that the 711 ADT would contribute to excessive traffic, especially because the highway turns into a two-lane road as traffic heads north, and because there is heavy traffic in the Summer when tourism is high. The Council also pointed out that vehicles entering and leaving the hotel would have to cross two lanes of traffic which would be dangerous given the already high volume of

traffic. Based on the Council's observations of the intersection and the ADT generated by the traffic report, the Council's denial was not so lacking in fact and foundation that it was clearly unreasonable. *Town & Country Foods, Inc.*, ¶ 13. Thus, the Council did not abuse its discretion in this regard.

## CONCLUSION

¶21 Reviewing Appellants' allegations, the Council's denial of Appellants' CUP was not so lacking in fact it was clearly unreasonable. Thus, the District Court appropriately granted summary judgment in favor of the City of Whitefish.

¶22 Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

9